IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| LULA L. GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     CV 124-018 |
| | ) |
| CAROLYN COLVIN, Acting Commissioner | ) |
| of Social Security Administration, | ) |
| | ) |
| Defendant.[1] | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff appeals the decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.  BACKGROUND**

Plaintiff protectively applied for Disability Insurance Benefits ("DIB") on December 18, 2020, and she alleged a disability onset date of May 19, 2020. Tr. ("R."), pp. 17, 66, 147. Plaintiff was sixty-one years old on May 19, 2020, and was sixty-five years old at the time the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Carolyn Colvin, Acting Commissioner of Social Security Administration, as the proper Defendant.

Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 26, 147. Plaintiff's alleged medical conditions are diabetes mellitus, hypertension, degenerative disc disease of the lumbar spine, atherosclerotic vascular disease, hypertension, hyperlipidemia, GERD, hemorrhoids, hiatal hernia/Shatzki's ring, allergic rhinitis, a history of fracture and osteoarthritis of the right great toe, degenerative joint disease of the right foot, Achilles tendonitis of the left lower extremity, osteopenia, and neuropathy. R. 20-26, 161. Plaintiff reported completing school through ninth grade, R. 162, and prior to her alleged disability date, accrued a history of past relevant work as a custodian in the public school system and as a private home care provider. R. 25-26, 162-63.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 66-75. Plaintiff requested a hearing before an ALJ on November 22, 2022, R. 17, 95, and ALJ Ronald Fleming held a hearing on March 23, 2023, R. 31. Represented by counsel, Plaintiff appeared and testified, as did a vocational expert ("VE") Ms. Lanier. R. 37-64. On August 2, 2023, the ALJ issued a decision finding Plaintiff not disabled. R. 17-26.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024. The claimant has not engaged in substantial gainful activity since May 19, 2020, the alleged onset date (20 CFR § 404.1571 *et seq*.).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, atherosclerotic vascular disease, and diabetes mellitus (20 CFR § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work[2] as defined in 20 CFR 404.1567(c) except she is limited to frequent climbing of ramps and stairs, frequent balancing, stooping, kneeling, crouching, and crawling, and no climbing ladders, ropes, or scaffolds.

The claimant is capable of performing past relevant work as a custodian and home attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

R. 10-26.

Because the ALJ determined Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from May 19, 2020, the alleged onset date, through the date of the ALJ's decision. R. 26. When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g).

Plaintiff then filed this civil action requesting remand, claiming the ALJ impermissibly rendered his own judgment about Plaintiff's RFC without relying on a physician's assessment. (See doc. no. 12, "Pl.'s Br.") Plaintiff additionally argues that while formulating the record evidence, the ALJ ignored an abnormal echocardiogram from 2021. (See id.) The Commissioner maintains substantial evidence supports the ALJ's decision because the ALJ was not required to rely on a medical opinion to formulate the RFC, was not required to discuss every piece of record evidence, and sufficiently considered and discussed Plaintiff's condition as a whole, relying on recent and relevant medical evidence. (See doc. no. 13, "Comm'r's Br.")

---

[2] "Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c) & 416.967(c).

3

II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff argues the record supports additional limitations in Plaintiff's RFC, and the ALJ impermissibly formulated the RFC without the benefit of a physician's assessment concerning Plaintiff's functional capacity. (Pl.'s Br., pp. 4-8.) Plaintiff believes the record evidence shows sufficient impairment to justify a physician's assessment and the ALJ failed to consider medical records from March 17, 2021, showing an abnormal echocardiogram. (Id. at 5-7.) The Commissioner maintains the ALJ was not required to supplement the record with a physician's assessment, nor was he required to discuss every piece of record evidence. (Comm'r's Br., pp. 4-13.) The Commissioner further contends substantial evidence supports the ALJ's findings and conclusion Plaintiff is not disabled. (See id. at 9-13.) The Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

####   A.   Step Four Framework for Formulating Plaintiff's RFC and Determining Ability to Return to Past Relevant Work

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her

impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

An ALJ must also consider all of a claimant's impairments, severe and non-severe, in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (*per curiam*) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). As one of the Commissioner's policy interpretation rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit

6

> an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. Id.

After determining a claimant's RFC, the ALJ evaluates whether claimant can perform past relevant work. When a claimant has an RFC allowing for performance of her past relevant work as she actually performed it *or* as generally performed in the national economy, she is not disabled. 20 C.F.R. § 404.1560(b). The claimant bears the burden showing an inability to return to her past relevant work. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). However, the Commissioner has a duty to develop a full and fair record, including inquiring into the specific requirements and demands of a claimant's past relevant work. Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 (11th Cir. 2015) (*per curiam*); Nazario v. Astrue, No. 07-61833-CIV, 2009 WL 347424, at *16 (S.D. Fla. Feb. 11, 2009); see also Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1356 (11th Cir. 2018) ("In processing disability claims, the ALJs do not simply act as umpires calling balls and strikes. They are by law investigators of the facts, and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case."). An ALJ may rely on the knowledge and expertise of a VE to in determining whether someone in claimant's position can perform past relevant work. See Simpson v. Comm'r of Soc. Sec., 423 F. App'x 882, 884 (11th Cir. 2011) (*per curiam*).

      **B.**    **The ALJ Was Not Required to Obtain a Consultative Evaluation**

The ALJ is tasked with developing a full and fair record, which may include obtaining

a consultative examination when necessary. See Henry, 802 F.3d at 1267; Nazario, 2009 WL 347424, at *16; Washington, 906 F.3d at 1356. "Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." Banks for Hunter v. Comm'r, Soc. Sec. Admin., 686 F. App'x 706, 713 (11th Cir. 2017) (citation omitted); 20 C.F.R § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."); Nardelli v. Comm'r of Soc. Sec., No. 23-11581, 2024 WL 565383, at *5 (11th Cir. Feb. 13, 2024) ("An ALJ must 'develop the record where appropriate but' need not 'order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'" (quoting Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007))).

      Here, the record was substantial, containing extensive medical records, prior administrative medical evaluations, and Plaintiff's testimony at the hearing. The ALJ carefully considered the entire record and cited extensively to the record evidence throughout his decision, as discussed further *infra*. Plaintiff argues a consultative examination was necessary in light of "[t]he confluence of Plaintiff's old age, recurrent left chest pain, abnormal echocardiogram, abnormal carotid artery ultrasound, and accommodations in her current part-time work." (Pl.'s Br., p. 6.) However, the record contained ample evidence for the ALJ to make an informed assessment concerning Plaintiff's RFC, which "is a matter reserved for the ALJ's determination." Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012). Moreover, Plaintiff "fails to identify any gaps in the evidence[,] . . . was

represented during the administrative process[,] and was responsible for producing evidence related to her disability." Sarria v. Comm'r of Soc. Sec., 579 F. App'x 722, 724 (11th Cir. 2014) (unpublished). The record evidence, discussed in detail by the ALJ, provided sufficient evidence for the ALJ to adequately assess Plaintiff's RFC, and the ALJ did not err when he made the discretionary decision not to order a consultative examination. In sum, Plaintiff has not shown a consultative examination was necessary to cure a defect in the record, and the ALJ properly determined ordering a consultative examination was unnecessary in light of the well-developed record.

    **C.**    **Plaintiff's RFC Is Supported by Substantial Evidence**

Plaintiff argues the ALJ erred when formulating Plaintiff's RFC by determining Plaintiff can perform medium work with additional restrictions, as the record supports less than a medium RFC. (Pl.'s Br., pp. 4-7.) Specifically, Plaintiff argues evidence of Plaintiff's cardiovascular health, including records of an abnormal March 17, 2021, echocardiogram, were improperly discredited or ignored entirely by the ALJ, and contradict the ALJ's finding Plaintiff can perform medium work with additional restrictions. (Id.)

When formulating Plaintiff's RFC, the ALJ found "that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she is limited to frequent climbing of ramps and stairs, frequent balancing, stooping, kneeling, crouching, and crawling, and no climbing ladders, ropes, or scaffolds." R. 26. The ALJ's discussion of the limitations discussed by Plaintiff states, in relevant part:

> [a]n echocardiogram performed in 2017 indicated mild regurgitation with an ejection fraction of 55%. A stress test showed normal systolic function, no chest discomfort, nondiagnostic ST/T changes, and an increased tid score with no focal ischemia or ventricular dysfunction. An ultrasound performed in October of 2022 showed stenosis in the mid left internal carotid artery with antegrade flow in the

> left vertebral artery and retrograde flow in the right vertebral artery, and atherosclerotic plaque in the right and left common carotid arteries. Lab testing indicated an A1c of 6.2% in August of 2020, 6.4% in March of 2021, and 6.1% in July and November of 2021, and in July of 2022.
>
> Treatment notes reflect intermittent complaints of back and chest pain with generally mild clinical signs. In February of 2020, . . . [a]n exam noted . . . regular heart rate and rhythm, no respiratory distress, and no lower extremity edema (Ex. 4F at 8). In August, . . . [a]n exam was normal with a regular heart rate and rhythm, and normal diabetic foot exam. . . . In March of 2021, the claimant complained of intermittent chest pain not associated with movement or exertion. An examination was normal, indicating no acute distress, a regular heart rate and rhythm, no murmur, no edema in lower extremities, non-labored respiration, no back tenderness, normal musculoskeletal range of motion, normal strength, no tenderness or swelling, and normal sensory and motor function. A chest x-ray was negative for acute cardiopulmonary process, and troponin testing was negative. An exam in May of 2021 for complaints of reflux noted no apparent distress, a regular heart rate with no murmurs, rubs, or gallops, and no peripheral edema.
>
> An exam [in July 2021] was normal with a regular heart rate and rhythm, no extremity edema, and a nonfocal neurologic exam. At a follow-up in November, . . . [a]n exam noted a regular heart rate and rhythm, no extremity edema . . . . In February of 2022, she reported doing "really well" at a follow up for hypertension and prediabetes. She denied chest pain, shortness of breath, lower extremity edema, or back pain, and reported she could stand and walk without pain on meloxicam. An exam was normal with a regular heart rate and rhythm and no edema. An exam in July of 2022 indicated a regular heart rate and rhythm with no murmurs, and no extremity edema. [I]n November[, r]ecords indicate an ECG was unchanged. An exam noted a regular heart rate and rhythm, no extremity edema, and a nonfocal neurologic exam. Finally, an exam in January of 2023 was normal with no acute distress, and a regular heart rate and rhythm.

R. 23-24 (citations omitted). After reviewing Plaintiff's medical records, primarily those related to her cardiovascular health and recorded complaints of chest pain, see R. 23-25, the ALJ summarized:

> Medical records are not consistent with the degree of functional limitation alleged. . . . The Treatment notes reflect occasional complaints of back or chest pain, but a regular heart rate and rhythm, normal gait, no respiratory distress, no persistent chest tenderness, no persistent back or musculoskeletal tenderness, a normal range of motion, normal strength, no sensory deficits, no lower extremity swelling, normal diabetic foot exams, and negative straight leg raise testing.

10

R. 29 (citing R. 515, 521, 595, 601, 702, 732, 736, 740, 745, 776).

Thus, after a thorough review of the record, the ALJ limited Plaintiff to frequent climbing of ramps and stairs, frequent balancing, stooping, kneeling, crouching, and crawling, and precluded climbing ladders, ropes, or scaffolds. These limitations represent wide-ranging accommodations of Plaintiff's various impairments.

To start, Plaintiff correctly notes the ALJ did not specifically cite to the single page containing records of March 17, 2021, echocardiogram test results, which were produced when Plaintiff visited the emergency room for complaints of chest pain. (Pl.'s Br., p. 6); R. 636 (March 17, 2021, echocardiogram); see also R. 22-25 (ALJ's RFC assessment); R. 598-602 (notes concerning emergency room visit). However, the ALJ is not required to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review. Gogel v. Comm'r of Soc. Sec., Case No. 220-CV-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005), and 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)). Moreover, the ALJ *did* discuss this March 17, 2021, emergency visit, and noted the following:

> In March of 2021, the claimant complained of intermittent chest pain not associated with movement or exertion. An examination was normal, indicating no acute distress, a regular heart rate and rhythm, no murmur, no edema in lower extremities, non-labored respiration, no back tenderness, normal musculoskeletal range of motion, normal strength, no tenderness or swelling, and normal sensory and motor function. A chest x-ray was negative for acute cardiopulmonary process, and troponin testing was negative.

R. 24 (citing R. 601). Thus, the Court finds no error where the ALJ discussed a particular emergency room visit, but did not specifically reference a test result labeled "Abnormal ECG **Unconfirmed**" and notes a "[w]idespread ST-T abnormality *may* be due to myocardial ischemia," R. 636 (emphasis added), particularly where the doctor's notes discussed and cited by

the ALJ provide additional context and diagnostic value.

The Court finds the RFC is supported by substantial evidence. The ALJ carefully examined evidence from various medical providers and Plaintiff's own testimony showing the extent to which her claimed impairments, including cardiovascular health issues, impacted the assessment of Plaintiff's RFC. See R. 22-25. The ALJ did not find Plaintiff could perform all ranges of work with *no* limitations. The ALJ instead included several exertional limitations in the RFC that specifically relate to functional limitation evidence before the ALJ, including those which relate to Plaintiff's claimed limitations. The RFC limits Plaintiff to only medium work and further limits Plaintiff to no more than frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and entirely precludes Plaintiff from climbing ladders, ropes, or scaffolds. There is substantial evidence supporting each of those limitations. Plaintiff still maintains the RFC does not include additional limitations related to Plaintiff's abilities. However, as explained, the RFC does include such restrictions and Plaintiff identifies no specific error in the ALJ's reasoning not to include additional restrictions beyond those included in the RFC.

All in all, the RFC is consistent with the record evidence. While one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court. The Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59; Moore, 405 F.3d at 1211. The RFC here is supported by substantial evidence.

IV.   **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the

Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 3rd day of January, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA